UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
:
MARK BARTLEY,                                                   :   95 Civ. 10161 (RJH)
                                                                :
                        Plaintiff,                              :
                                                                :   <u>MEMORANDUM OPINION</u>
                                                                :   <u>AND ORDER</u>
        -against-                                               :
                                                                :
                                                                :
TODD COLLINS; CHRISTOPHER PECORE;                               :
and TIMOTHY BATES,                                              :
                                                                :
                        Defendants.                             :
                                                                :
---------------------------------------------------------------x

Plaintiff Mark Bartley ("Bartley") brought claims pursuant to 42 U.S.C. § 1983 in his third amended complaint against several defendants employed by the New York State Department of Corrections ("DOCS"), alleging violations of his First and Fourteenth Amendment rights not to be retaliated against for the exercise of his right of access to the courts. Defendants now move for summary judgment on all claims. For the reasons set forth below, the Court grants defendants' motion.

**BACKGROUND**

Unless otherwise indicated, the following facts are undisputed.[1] Plaintiff Bartley was at all relevant times a DOCS inmate at Green Haven Correctional Facility ("Green

---

[1] The facts as herein recited are drawn from defendants' Rule 56.1 Statement ("Defs.' 56.1 ¶ __"), plaintiff's response to defendants' Rule 56.1 Statement ("Pl.'s 56.1 ¶ __"), Bartley's deposition ("Bartley Dep."), and records of disciplinary hearings stemming

Haven") in New York. (Defs.' 56.1 ¶ 3.) Defendants Todd Collins ("Collins"), Timothy Bates ("Bates"), and Christopher Pecore ("Pecore") were at all relevant times correctional officers at Green Haven. (*Id.* ¶¶ 8-10.)

At about 2:45 a.m. on April 16, 1995, Scott Turrisi, a mentally ill inmate at Green Haven, set a fire in his cell in an apparent suicide attempt. (Defs.' 56.1 ¶ 12.) Bartley and several other inmates were injured, one of whom died three days later. (*Id.* at ¶¶ 12, 15; Pl.'s 56.1 ¶¶ 12, 15.) Shortly after the fire, Bartley, together with another inmate, Felix Diaz ("Diaz"), began to prepare lawsuits against DOCS employees for their alleged failure to properly care for inmates in the events leading up to and after the fire. (Defs.' 56.1 ¶ 42.)

Bartley, who was known as a jailhouse lawyer, asserts that prior to the fire, he had a "relatively clean" disciplinary record. (Pl.'s 56.1 ¶ 60; Bartley Dep. at 99-100.) On the morning of April 16, 1995, the day of the fire, Bartley and Diaz circulated a petition among inmates at the prison clinic in preparation for a lawsuit. (Defs.' 56.1 ¶¶ 42-43.) In his complaint, Bartley alleged that following that action, he was retaliated against by defendants. (Third Am. Compl. ¶¶ 41-49.)

A. Alleged Retaliation by Collins

Bartley testified that in the days following the fire, Collins made false charges against him on two occasions for minor infractions. (Bartley Dep. at 98-99.) Those misbehavior reports resulted in Bartley being put in "keeplock" confinement,[2] thereby denying him access to the law library for approximately ten days. (*Id.*; Schulman Decl.

---

from Todd Collins's April 19, 1995 misbehavior report against Bartley ("Schulman Decl. Ex. M" and "Schulman Decl. Ex. Q").

[2] When under keeplock confinement, an inmate is confined to his cell for 23 hours a day and loses various privileges. 7 N.Y. Comp. Codes R. & Regs. tit. 7, §§ 301.1-301.6.

2

Ex. M at 247.) Bartley asserts that this was done to prevent him from seeking legal redress for injuries resulting from the prison fire. (Bartley Dep. at 100).

Prior to April 18, Collins had counseled Bartley for not locking up properly, but had not, to his recollection, written a misbehavior report against him. (Defs.' 56.1 ¶ 45.) On April 18, Collins wrote a misbehavior report against Bartley for allegedly ignoring repeated orders to lock in for a count. (Defs.' 56.1 ¶ 46; Pl.'s 56.1 ¶ 46.) Collins claims that when ordered to return to his cell, Bartley stopped at two cells to talk to people, thereby delaying the count. (Defs.' 56.1 ¶ 47.) Bartley maintains that the charges were false and that any delay was the result of Bartley being in a wheelchair (Schulman Decl. Ex. Q at 5). Collins put Bartley on keeplock status pending a disciplinary hearing on the charges. (Defs.' 56.1 ¶ 47.) After an April 20 hearing that Bartley did not attend, Bartley was found guilty of two of three charges against him and was given a fifteen-day loss of package, commissary, and phone privileges. (Defs.' 56.1 ¶ 46.)

On April 19, after Bartley was informed that he was on keeplock, he and Collins had a heated exchange. According to Collins, plaintiff called him a "cocksucker" and a "punk faggot bitch" and threatened to "kick Collins' ass and make problems for him." (Schulman Decl. Ex. Q at 2.) Collins wrote another misbehavior report, and at an April 24th hearing, Bartley admitted to using a hostile tone and calling Collins names, including "cocksucker." (*Id.* at 5.) However, Bartley denied making any threats and alleged that Collins told him he had a "big mouth" because Bartley had told Diaz to bring a lawsuit about the fire. (*Id.* at 6.) Ultimately, Bartley plead guilty to harassment, was found guilty of creating a disturbance, and was declared not guilty of charges of threats and violent conduct. (*Id.* at 3, 8; Schulman Decl. Ex. M at 247.) For the two infractions,

Bartley was given 10 days of keeplock. (Schulman Decl. Ex. Q at 8; Schulman Decl. Ex. M at 247.)

In his complaint, Bartley alleges that, in addition to having him placed in keeplock, Collins threatened him by saying that Bartley "better drop" his lawsuit. (Third Am. Compl. ¶ 48.) However, Bartley offers no evidence to support the allegation of a threat except for testimony that "all of these defendants . . . [were] bothering me, saying little snide remarks, saying we going to get you, you better drop the suit, and all this other stuff," and that "they told me you better drop the lawsuit, Bartley," where Collins apparently was among the "they" to whom Bartley was referring. (Bartley Dep. at 104-07).

B. Alleged Retaliation by Bates

In his complaint, Bartley alleges that in the days following the fire, Bates filed false charges of littering and other minor infractions against him to "punish and deter" him from filing a lawsuit. (Third Am. Compl. ¶ 46.) On April 19, Bates wrote a misbehavior report against Bartley for littering and for obstructing the view inside his cell with a sheet. (Defs.' 56.1 ¶ 57.) Bartley denies the charges but did not attend the resultant disciplinary hearing, where he was found guilty of three of the four charges against him and given a thirty-day loss of privileges. (*Id.*; Pl.'s 56.1 ¶ 57.)

C. Alleged Retaliation by Pecore

Also in his complaint, Bartley alleges that Pecore retaliated against him by telling him, after Bartley and Diaz began preparing lawsuits, "Pataki will have to foot the bill anyway, so he doesn't care what I do" and "you better drop the lawsuit Bartley." (Third Am. Compl. ¶ 47.) Bartley further alleges that Pecore threatened him with serious bodily

harm, including death, if Bartley did not discontinue the lawsuit. (*Id.*) However, Bartley provides no evidence of the time, date, place, circumstances, or words employed in the alleged threats of physical violence, save for testimony that "two of the defendants in the present action," who Bartley does not identify, "approached me, accosted me and threatened me physically and verbally of what they would do." (Bartley Dep. at 104.) Pecore affirmatively denies having had any discussions with Bartley after the fire. (Defs.' 56.1 ¶ 53; Pl.'s 56.1 ¶ 53.)

## DISCUSSION

A. <u>The Summary Judgment Standard</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment may also be granted when the opposing party fails to establish an element essential to that party's case and on which that party would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986); *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir. 1998) (summary judgment is "mandated" when "the evidence is insufficient to support the non-moving party's case")

In reviewing the record, the district court must assess the evidence in "the light most favorable to the non-moving party," resolve all ambiguities, and "draw all reasonable inferences" in its favor. *Am. Cas. Co. v. Nordic Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir. 1994); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But an

alleged factual dispute between the parties will not by itself defeat a motion for summary judgment because "the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48 (emphasis in original). "A fact issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 248). "A fact is 'material' if it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson*, 477 U.S. at 248).

Moreover, to survive summary judgment, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256-57; *Gross v. Nat'l Broad. Co., Inc.*, 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002). Where, as here, a plaintiff's case depends in part on his own statements and observations, such statements must "'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

Thus, hearsay statements that would be inadmissible at trial, conclusory assertions, and mere denials contained in those affidavits are insufficient to create a genuine issue of material fact. *Id.* (internal citations omitted); *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 123-24 (2d Cir. 2001); *Quinn v. Syracuse Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). Neither will "unsubstantiated speculation" suffice. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citation omitted). Rather, the nonmoving party must "set forth specific facts showing that there is

a genuine issue for trial." Fed. R. Civ. P. 56(e). With these principles in mind, the Court turns to the merits of the defendants' motion.

B. Bartley's Retaliation Claims

Prisoners have a constitutional right to petition the government, and it is a violation of § 1983 for prison officials to retaliate against prisoners for the exercise of that right. *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (prisoner stated a valid claim under § 1983 by alleging that a prison official filed false disciplinary charges against him in retaliation for his exercise of a constitutional right to file a grievance); *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) ("[F]iling of a grievance and attempt to find inmates to represent the grievants. . . is constitutionally protected."); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citing *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988)) ("[P]risoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right."); *Ciaprazi v. Goord*, No. Civ. 9:02CV00915, 2005 WL 3531464, at *7 (N.D.N.Y. Dec. 22, 2005) ("[P]laintiff, who has lodged formal complaints of prison conditions and treatment of inmates, has engaged in protected activity.").

However, courts are to "approach prisoner claims of retaliation with skepticism and particular care" because such claims are easily fabricated and may cause unwarranted judicial interference with prison administration. *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("[V]irtually any adverse action taken against a prisoner by a prison official . . .

7

can be characterized as a constitutionally proscribed retaliatory act."); *see also Gill v. Pidlypchack*, 389 F.3d 379, 385 (2d Cir. 2004) (Scullin, C.J., concurring).

In order to sustain a First Amendment retaliation claim, "a prisoner must demonstrate the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Gill*, 389 F.3d at 380 (quoting *Dawes*, 239 F.3d at 492). If each of the three elements of a *prima facie* case of retaliation is established, the burden shifts to the defendants "to show that the plaintiff would have received the same punishment even absent the retaliatory motivation," in which case the plaintiff's claim must fail. *Gayle*, 313 F.3d at 682 (2d Cir. 2002); *Freeman v. Goord*, 2005 WL 3333465, at *4 (S.D.N.Y. Dec. 10, 2005) ("Even if an inmate plaintiff meets his burden under this three-pronged test, defendants are entitled to summary judgment … if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone," as courts "employ a presumption that a prison official's acts to maintain order are done for a proper purpose.") (citations and quotations omitted).

*1. Constitutionally Protected Conduct*

Plaintiff asserts that he was retaliated against for engaging in the constitutionally protected activity of circulating a petition in preparation for legal proceedings. Defendants counter that under the Second Circuit's decision in *Duamutef v. O'Keefe*, 98 F.3d 22, 24 (2d Cir. 1996), circulating a petition is not protected conduct.

The circulation of a petition by a prisoner is generally protected by the First Amendment. *Haymes v. Montanye*, 547 F.2d 188, 191 (2d Cir. 1976), *cert. denied*, 431 U.S. 967 (1977). However, that right "must be weighed against legitimate safety interests of the prison." *Duamutef*, 98 F.3d at 24 (reiterating the multi-factor test to determine the validity of a regulation that impinges on inmates' constitutional rights as set forth in *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987).). The *Duamutef* court held that where there was an official grievance procedure available to prisoners and a plaintiff did not claim that his petition contained requests that could not be addressed through that procedure, it was "permissible for prison officials to bar the circulation of petitions." *Id.* at 24 (citing *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980), *cert. denied*, 449 U.S. 1018 (1980); *Edwards v. White*, 501 F. Supp. 8, 11-13 (M.D. Pa. 1979), *aff'd*, 633 F.2d 209, 212 (3d Cir. 1980). The *Nickens* court ruled similarly, relying on the affidavit of a prison superintendent who explained that petitions were banned for security concerns and that alternative means were available for communicating grievances. 622 F.2d at 970.

Courts have noted that even though *Duamutef* held that petitions *could* be banned, the ruling did not forbid petitions. *Farid v. Goord*, 200 F. Supp. 2d 220, 236 (W.D.N.Y. 2002). Where the defendant asserted that the plaintiff "does not have a right to circulate a petition" but did not reference a rule or regulation that prohibited petitioning, the *Farid* court held that the plaintiff, in circulating a petition, had engaged in protected conduct. *Id.* Defendants here similarly do not identify a prison regulation prohibiting petitioning by prisoners that justifies a limitation of plaintiff's First Amendment rights. In the absence of penitentiary rules proscribing petitioning, plaintiff's activity was
9

constitutionally protected and as such, plaintiff satisfies the first element of his prima facie case of retaliation with respect to all three defendants.

2. *Adverse Action*

Plaintiff alleges that all three defendants took adverse action against him: Collins by verbally pressuring him to not bring legal action and filing misbehavior reports that put him in keeplock and caused him to lose privileges, Bates by filing false charges that cost him privileges, and Pecore by threatening him with physical violence. Defendants maintain that plaintiff's claims are conclusory and do not rise to the level of severity required for the actions to be characterized as adverse.

In evaluating what constitutes adverse action, a court should be mindful that "'Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse.'" *Dawes*, 239 F.3d at 493 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) (en banc) (per curiam)).

In the prison context, adverse action is defined objectively as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill*, 389 F.3d at 381, 383 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). A subjective definition is not adopted because "it would be unfair in the extreme to rule that plaintiff's bringing of the subsequent claim in itself defeated his claim of retaliation." *Id.* If the retaliatory conduct would not deter a similarly situated prisoner of ordinary firmness from exercising his constitutional rights, it "'is simply *de minimis* and therefore outside the ambit of constitutional protection.'" *Davis*, 320 F.3d at 353 (quoting *Dawes*, 239 F.3d at 493).

With respect to his claims that Collins and Pecore issued verbal threats against him, plaintiff does not survive summary judgment. His deposition testimony that multiple defendants threatened him and encouraged him to abandon his lawsuit is conclusory because it is insufficiently specific with regard to the identification of any one defendant, and does not adequately provide the time, date, place, or circumstances of the alleged remarks. *See, e.g., Gaines v. Artus*, No. 9:04-CV-76, 2006 WL 721618, at *5 (N.D.N.Y. Mar. 20, 2006) (prisoner's § 1983 claim for denial of proper medical care dismissed on summary judgment in part because "[d]uring plaintiff's deposition, he . . . could never be specific regarding the individuals allegedly responsible for this sub-standard care" and therefore "makes only conclusory claims"); *Jasmin v. New York State Dept. of Labor*, No. 98 Civ. 7569, 2000 WL 194774, at *2 (S.D.N.Y. Feb. 17, 2000) (plaintiff's "conclusory deposition testimony that co-worker 'has constantly been harassing me until last week' is utterly insufficient to create an issue of fact for the jury"); *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1995) (plaintiff "cannot defeat [a summary judgment] motion by relying on the allegations in his pleading, . . . or on conclusory statements") (citations omitted).

Even if plaintiff's deposition testimony were deemed sufficiently specific, verbal threats such as "we going to get you, you better drop the suit,"[3] do not rise to the level of adverse action. *See Dawes*, 239 F.3d at 493 (2d. Cir. 2001) ("Not every unnecessary statement of a prison guard regarding an inmate's exercise of free speech violates the First Amendment"); *Alicea v. Howell*, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005)

---

[3] Because plaintiff did not testify to it in his deposition, the Court excludes from consideration the allegation made only in plaintiff's unverified complaint that Pecore "on at least one occasion, threatened to kill [Bartley] if he did not discontinue this lawsuit." (Third Am. Cmpl. ¶¶ 47.) *See* discussion *infra*.

11

("[Defendant's] alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance against [defendant] do not give rise to a First Amendment retaliation claim."); *Williams v. Muller*, No. 98 Civ. 5204, 2001 WL 936297, at *4 (S.D.N.Y. Aug. 17, 2001) (defendant's "alleged spreading of rumors [that] plaintiff claims . . . were intended to incite the inmates to harm plaintiff . . . do not give rise to a retaliation claim"); *Cruz v. Hillman*, No. 01 Civ. 4169, 2002 WL 31045864, at *7 (S.D.N.Y. May 16, 2002) (allegation that corrections counselor expressed his dislike for inmates who file civil lawsuits, and later came to plaintiff's cell and said 'Green Haven is an open battlefield, so be careful' insufficient to state a retaliation claim).

Plaintiff's complaint, although more particular than his testimony with regard to what each defendant allegedly said, does not defeat defendants' motion for summary judgment. Not only does the complaint, like plaintiff's testimony, inadequately plead the time, date, place, or circumstances of the alleged remarks, but because it is unverified, it cannot be relied on as evidence in opposing a summary judgment motion. *Trinidad v. New York City Dept. of Correction*, ---F.Supp.2d ----, 2006 WL 704163, at *6 (S.D.N.Y. Mar. 21, 2006) (Unsworn materials are "an insufficient basis for opposing a motion for summary judgment"); *Dukes v. City of New York*, 879 F. Supp. 335, 343 (S.D.N.Y. 1995) ("Unsworn statements are not admissible to controvert a summary judgment motion."); *Kelly v. United States*, 924 F.2d 355, 357 (1st Cir. 1991) (to survive summary judgment, "the nonmovant may not rest upon mere allegations in, say, an unverified complaint or lawyer's brief, but must produce evidence which would be admissible at trial to make out the requisite issue of material fact") (citing Fed. R. Civ. P. 56(e)); *Solo Serve Corp. v.*

*Westowne Assoc.*, 929 F.2d 160, 165 (5th Cir. 1991) ("Given that [defendant] has filed a properly supported motion for summary judgment, [plaintiff] cannot rely on the facts in its unverified complaint, but must point to evidence in the record sufficient to establish the alleged facts to avoid summary judgment.")

Bates' misbehavior report against plaintiff and Collins's first report, which both resulted in plaintiff's temporary loss of various privileges such as permission to visit the commissary, likewise do not constitute adverse action because they were *de minimis*: they do not constitute penalties that would deter a similarly situated prisoner of ordinary firmness from exercising his constitutional rights. *Compare Pledger v. Hudson*, No. 99 Civ. 2167, 2005 WL 736228, at *5 (S.D.N.Y. Mar. 31, 2005) (correction officer's issuance of an unfavorable evaluation of prisoner and threat to place him in a Special Housing Unit did not meet the standard of adverse action), *with Gill*, 389 F.3d at 384 (plaintiff's allegation that defendants filed false misbehavior reports against him, resulting in his being sentenced to three weeks of keeplock, constituted a claim of adverse action), *and Wheeler v. Beard*, No. Civ. A.03-4826, 2005 WL 1840159, at *3 (E.D. Pa. Aug. 3, 2005) (prisoner plaintiffs alleged adverse action in retaliation claim by claiming that defendants, among other things, denying medical treatment and prison-issued undergarments, destroying legal mail and other legal materials, planting contraband in cell to serve as basis for bogus misconduct report, and caused one plaintiff to lose his job).

However, Collins's second misbehavior report against plaintiff did constitute adverse action because it caused plaintiff to be placed in keeplock confinement for ten days. *Auleta v. LaFrance*, 233 F. Supp. 2d 396, 402 (N.D.N.Y. 2002) ("Plaintiff's claim

that he was placed in keeplock for 7 1/2 days is properly construed as alleging an adverse action"); *Lashley v. Wakefield*, 367 F. Supp. 2d 461, 467 (W.D.N.Y. 2005) (noting holdings in other cases that nine days' keeplock confinement does not necessarily as a matter of law constitute *de minimis* alleged retaliation).

*3. Causal Connection*

Plaintiff alleges that the actions taken by defendants were in retaliation against his engagement in the protected conduct of circulating a petition, while defendants assert that the events were unrelated. To show a causal connection between his protected act and the adverse action, a plaintiff must make more than merely conclusory allegations. *See Dawes*, 239 F.3d at 491 ("bald allegations of retaliation" will not suffice; the causal connection must be "sufficient to support the inference that the speech played a substantial part in the adverse action"). Evidence of improper motive may be circumstantial and can include "(1) temporal proximity between the protected activity and the alleged retaliatory act; (2) the plaintiff's prior good disciplinary record; (3) the plaintiff's vindication at his disciplinary hearing; and (4) the defendants' statements regarding their motive for the discipline." *Chavis v. Kienert*, No. 9:03-CV-0039, 2005 WL 2452150, at *16 (N.D.N.Y. Sept. 30, 2005) (citing *Colon*, 58 F.3d at 872-73).

In *Gayle*, the Second Circuit overruled a district court's grant of summary judgment for defendants in a case in which the plaintiff proffered sufficient evidence to "create a genuine issue of material fact as to whether retaliation was a substantial factor in the DOCS officials' decision to charge and punish" him. 313 F.3d at 683. The *Gayle* court came to its conclusion based on circumstances involving, *inter alia*, the prisoner's receipt of a misbehavior report shortly after filing a grievance; the report's relationship to

a discussion the prisoner and a guard held regarding the grievance, the fact that the prisoner and a guard offered conflicting testimony at a disciplinary hearing regarding what prompted the report; a guard's lack of credibility when testifying at the hearing, and the fact that the hearing (at which the prisoner was found guilty of violating a rule) was administratively reversed. *Id.* at 683-84.

Plaintiff's allegation of a causal connection between his protected act and Collins' second misbehavior report is sufficient, although weaker than that in *Gayle*. The report, which caused plaintiff to be placed in keeplock, came just three days after the date of the prison fire and plaintiff's circulation of a petition, a temporal proximity that may suggest causality. *Colon*, 58 F.3d at 872 ("[T]emporal proximity between an inmate's lawsuit and disciplinary action may serve as circumstantial evidence of retaliation.") (citations omitted). Plaintiff's assertion that he had a relatively clean disciplinary record prior to the fire also suggests the possibility of improper motive. *Id. (*"[E]vidence of prior good behavior also may be circumstantial evidence of retaliation.") (citation omitted). However, at the disciplinary hearing regarding the second report, plaintiff was not only found guilty of two of the charges against him but also pled guilty to one of them. In *Pledger*, the court granted a defendant's motion for summary judgment where a plaintiff did not deny the factual foundation of the criticisms made in an allegedly retaliatory negative evaluation by a prison official. 2005 WL 736228, at *4. Here, plaintiff's acknowledgement of the factual basis of one of the charges made in Collins's second report weakens his claim that the report was retaliatory, but plaintiff did contest the other three charges in the report and was found not guilty of two of them. On balance, the Court concludes that a material issue of fact has been created on the issue of causation.

*4. Defendants' Justifications for Their Actions*

Defendants claim that even if plaintiff satisfies the three elements of a prima facie case of retaliation, as plaintiff does with respect to Collins's second misbehavior report, their actions were not unlawful because they would have engaged in them even absent the plaintiff's protected conduct.

Summary judgment should be granted for the defendants if they can show that there is no genuine issue that they would have taken the same action—here, writing a misbehavior report that caused plaintiff to be put in keeplock for ten days—even without retaliatory motivation. *See, e.g.*, *Gayle*, 313 F.3d at 682; *Graham,* 89 F.3d at 79. In making this determination, the court should employ a "'presumption that a prison official's acts to maintain order are done for a proper purpose.'" *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998) (quoting *Rivera v. Senkowski*, 62 F.3d 80, 86 (2d Cir. 1995), *cert. denied*, 525 U.S. 907 (1998)). "The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff 'committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report.'" *Gayle*, 313 F.3d at 682 (quoting *Hynes*, 143 F.3d at 657).

Collins wrote his second misbehavior report against plaintiff after plaintiff called him various epithets, which plaintiff later admitted to at a disciplinary hearing. Although Bartley was found not guilty of charges of threats and violent conduct, those charges stemmed from the same behavior for which Bartley was found guilty on two other charges. Between the presumption that Collins acted with a proper purpose and the fact that plaintiff acknowledged engaging in the conduct underlying the charges, Collins

16

satisfies his burden of showing that he would have written the report even if plaintiff had not earlier circulated a petition.

C. Qualified Immunity

Because the claims against defendants are otherwise dismissed, the Court need not address defendants' assertion of qualified immunity.

SO ORDERED.

Dated: New York, New York
       May /_, 2006

                                               _____
                                               Richard J. Holwell
                                               United States District Judge